**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **TD BANK, N.A.,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 09-307-P-H** |
| | ) | |
| **PHILIP SEWALL, ET AL.,** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

**DECISION AND ORDER ON DEFENDANTS' MOTION TO TRANSFER TO THE UNITED STATES BANKRUPTCY COURT**

This case presents the question whether a creditor's lawsuit against a debtor's guarantors is "related to" the debtor's bankruptcy and should therefore be transferred to the bankruptcy court. I conclude that here the creditor's lawsuit against the individual guarantors is "related to" the debtor's bankruptcy because, if successful, the lawsuit could reduce or eliminate the creditor's existing claim in the bankruptcy case and thus increase the amount of money available to other creditors participating in the bankruptcy. Thus, the lawsuit could affect the debtor's plan confirmation. The defendant guarantors' motion to transfer the case to the bankruptcy court is therefore **GRANTED**.

**FACTS**

From 1998 to 2008, the plaintiff TD Bank, which has its principal place of business in Delaware, made five loans to M.W. Sewall & Co. ("the company" or

"the debtor").[1] This family business located in Bath, Maine, operates convenience stores, gas stations, carwashes, and service centers; sells and delivers heating oil and propane; and sells and services heating equipment.[2] The TD Bank loans totaled $12 million.[3] The defendants Mark Sewall and Philip Sewall are shareholders and officers or directors of the company.[4] In September 2007, in connection with a loan for $2.5 million, they signed guaranty agreements with TD Bank, individually promising "full and prompt payment and performance of all" the company's liabilities.[5] As collateral for their guarantees, the Sewalls pledged their shares of company stock to TD Bank.[6]

The guaranty agreements include a provision by which the Sewalls, the guarantors, waived indemnification by the company, at least temporarily. It states, in relevant part:

> The undersigned hereby expressly waives . . . any right to indemnity, contribution, exoneration or reimbursement of any kind by any other party directly or indirectly liable for any of the Liabilities, whether maker, endorser, guarantor or otherwise on account of any payment made hereunder, and any right of subrogation to the rights, remedies or security of the holder hereof on account of any payment made hereunder, such waiver applicable only until all of the Liabilities have been paid in full . . .[7]

[1] Compl. ¶¶ 1, 9 (Docket Item 1).
[2] Adversary Compl. ¶ 10 (Ex. A to Defs.' Answer to Compl. (Docket Item 9)) (Docket Item 9-2).
[3] Compl. ¶ 9.
[4] See, e.g., Settlement Agreement at 13 (Ex. D to Adversary Compl.) (listing Mark Sewall and Philip Sewall as shareholders); id. at 18 (Promissory Note, attached as Ex. A to Settlement Agreement, listing Philip Sewall as vice-president).
[5] Philip Sewall Guaranty (Ex. A to Compl.) (Docket Item 1-2); Mark Sewall Guaranty (Ex. E to Compl.) (Docket Item 1-6).
[6] Compl. ¶¶ 19, 21.
[7] Philip Sewall Guaranty at 4; Mark Sewall Guaranty at 4.

The company filed a Chapter 11 petition in March 2009.[8] It also sued TD Bank in an adversary proceeding in the bankruptcy court, seeking a declaratory judgment that some of TD Bank's loans to the company were unenforceable because the bank "aided and abetted a breach of fiduciary duty" by a company officer in connection with some of the loans.[9] TD Bank filed a secured claim in the bankruptcy court for $11,385,988.60 against the bankruptcy estate.[10] TD Bank also sued the defendant guarantors in this court in this proceeding, seeking declaratory judgment as to the validity and enforceability of the guaranty agreements and an order to sell the company stock that the guarantors pledged as collateral.[11] The defendant guarantors have moved to transfer this proceeding to the bankruptcy court.

## DISCUSSION

This court has jurisdiction over civil cases arising *under* Chapter 11, arising *in* a Chapter 11 proceeding, or *related to* a Chapter 11 bankruptcy.[12] The District of Maine has issued a local rule referring such cases to the United States Bankruptcy Court[13] for adjudication and determination or, in the context of "related to" cases, for the preparation of proposed findings of fact and conclusions

[8] Compl. ¶ 8.
[9] Defs.' Mot. to Transfer to the U.S. Bankr. Ct. at 2 (Docket Item 18).
[10] Claim 2059186-0, In re M.W. Sewall & Co., No. 09-20400 (Bankr. D. Me. Mar. 27, 2009) (listing of creditors and claims).
[11] Compl. ¶¶ 34-35.
[12] 28 U.S.C. § 1334(a) and (b).
[13] See D. Me. Loc. R. 83.6 ("All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district pursuant to 28 U.S.C. Section 157(a).").

of law for review by this court.[14] The only issue the parties argue on the Motion to Transfer is whether the creditor TD Bank's action to enforce the guaranty agreements is "related to" the company's bankruptcy.[15]

The guarantors contend that this proceeding is related to the bankruptcy case because if the creditor TD Bank is successful in this lawsuit, the company/debtor may have to indemnify the defendants both under their "right of subrogation arising from liability they may have for satisfying [the company's] primary obligation . . . [and under their] rights of indemnity under the [company's] By-laws."[16] Their indemnification claim could, they say, "have a substantial impact" on the bankruptcy and "affect the [company's] ability . . . to confirm a plan of reorganization," because it would place the guarantors among the company's largest unsecured creditors.[17] In addition, the guarantors argue that even if the guaranty agreements have waived their rights to indemnification, "[a]ny amount that the Bank recovers on its claims against the [guarantors] will reduce the Bank's claims against [the company/debtor] in its bankruptcy," with the result that other creditors will be able to recover more.[18] Accordingly, they maintain that the bankruptcy court should have the ability to consider the claims on the guarantees at the same time that it adjudicates both the underlying bankruptcy

---

[14] 28 U.S.C. § 157.

[15] The parties do not dispute that the plaintiff has properly invoked this court's diversity jurisdiction under 28 U.S.C. § 1332.

[16] Defs.' Mot. to Transfer at 4.

[17] Id. at 5.

[18] Defs.' Reply to T.D. Bank, N.A.'s Resp. to Mot. to Transfer at 4 (Docket Item 23).

and the company's adversary proceeding against the bank.[19] TD Bank counters that since the guarantors have waived all rights to indemnification or subrogation, this lawsuit seeking to enforce the guarantees cannot affect the bankruptcy estate.[20]

The parties agree that to determine whether the bankruptcy court can exercise "related to" jurisdiction, I should employ the test that the Third Circuit developed in Pacor v. Higgins.[21] Under Pacor, "a civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[22] But a case is not "related to" a bankruptcy simply because it shares facts with a Chapter 11 proceeding.[23] Rather, "related to" jurisdiction exists if a case's outcome could "potentially have some effect on the bankruptcy estate, such as altering a debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate."[24] The Supreme Court has noted that the Pacor standard appropriately limits the bankruptcy courts' jurisdiction while still giving full effect to Congress's decision "to grant comprehensive jurisdiction to the

---

19 Id. at 4-5.

20 TD Bank, N.A.'s Resp. to Defs.' Mot. to Transfer to U.S. Bankr. Ct. at 5 (Docket Item 22).

21 743 F.2d 984 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).

22 In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting Pacor, 743 F.2d at 994); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (citing Pacor with approval and noting that "[t]he First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the Pacor test with little or no variation"); Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 105 (1st Cir. 2005) (quoting In re G.S.F. Corp., 938 F.2d at 1475).

23 Pacor, 743 F.2d at 995.

24 In re G.S.F. Corp., 938 F.2d at 1475 (quoting In re Smith, 866 F.2d 576, 580 (3d Cir. 1989)).

bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[25]

In practice, it is not always easy to divide cases "relating to" bankruptcy from those that do not. As the First Circuit has explained, "[r]elated to" jurisdiction is "protean."[26] "[W]hat is 'related to' a proceeding under title 11 in one context may be unrelated in another" because the bankruptcy court's jurisdiction depends on the actual effect of a proceeding on the restructuring of debtor-creditor relations.[27]

***(A) The Indemnification Argument***

TD Bank maintains that this case should be governed by the holdings in Central Maine Restaurant Supply v. Omni Hotels Management Corporation[28] and Philippe v. Shape, Inc.,[29] cases in which my colleague, Judge Gene Carter, employed the Pacor test to lay out standards for determining whether indemnification cases satisfy "related to" jurisdiction. Philippe stands for the straightforward proposition that a suit against a guarantor whom a debtor in bankruptcy has an "unconditional duty to indemnify" relates to the debtor's bankruptcy because a judgment against the guarantor "would automatically result in indemnification liability" for the debtor, and "some part of the estate otherwise

---

[25] Celotex Corp., 514 U.S. at 308 (quoting Pacor, 743 F.2d at 994); see also In re Parque Forestal, 949 F.2d 504, 509 (1st Cir. 1991) (discussing Congressional response to Northern Pipeline Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982), superseded by statute, Bankr. Amendments and Fed. Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333)).
[26] In re Boston Reg'l Med. Ctr., Inc., 410 F.3d at 107.
[27] Id.
[28] 73 B.R. 1018 (D. Me. 1987).
[29] 103 B.R. 355 (D. Me. 1989).

owing to existing creditors would be susceptible to being diverted to meet this indemnity obligation."[30] Omni holds, by contrast, that where an "indemnification provision is subject to a number of conditions that render [the] right to indemnification uncertain," there is an insufficient nexus between bankruptcy proceedings and the guarantee litigation, with the result that "related to" jurisdiction does not exist.[31]

Omni's holding rests squarely on Pacor.[32] In Pacor, the plaintiffs sued an asbestos distributor for products liability related to asbestos manufactured by the debtor in bankruptcy.[33] The Third Circuit recognized that the distributor might ultimately have a claim for indemnification against the manufacturer/debtor, but concluded that the lawsuit against the distributor was "[a]t best . . . a mere precursor to the potential third party claim for indemnification by [the distributor] against [the manufacturer/debtor]."[34] As a result, "the outcome of the [lawsuit against the distributor] would in no way bind [the manufacturer/debtor] . . . [by] determin[ing] any rights, liabilities, or course of action of the debtor."[35] Since as a

---

30 Id. at 358; see also Krafchick v. Zayre of East Providence, Inc., 137 B.R. 560, 561 (D. Mass. 1991) (finding "related to" jurisdiction in the context of automatic indemnification of a guarantor).
31 73 B.R. at 1024. In Omni, a vendor sued an agent of a principal in bankruptcy to recover damages for non-payment for supplies. Id. at 1019-20. The vendor does not appear to have been a creditor in the bankruptcy, and the agency relation at issue in Omni may have been undisclosed. Id. Nevertheless, the agent argued that the debtor's reorganization plan gave it a right to indemnification and that therefore the vendor's suit related to the bankruptcy. Id. at 1023. Judge Carter found, however, that "nothing in the Reorganization Plan suggest[ed] an automatic flow of funds" from the debtor-principal to the agent. Id. at 1024. The agent would not have an indemnification right until it satisfied at least two contractual conditions precedent and even then would still have to bring suit. Id. As a result, the case did not relate to the bankruptcy because its outcome would have "no effect" on the debtor's estate. Id. at 1023.
32 See id. at 1023.
33 Pacor, 743 F.2d at 986.
34 Id. at 995.
35 Id.

non-party, the manufacturer/debtor would not be bound by res judicata or collateral estoppel, it could "relitigate any issue, or adopt any position, in response to a subsequent claim by [the distributor]."[36]

If the indemnification argument were all that the Sewalls, the defendant guarantors, had here, I would deny their Motion to Transfer because of Omni and Philippe. The guarantors have not shown that the company/debtor is under an unconditional duty to indemnify them. They argue that the company "may" have to indemnify them, but they admit that the company has not conceded "the validity or priority of any such claim for indemnity."[37] Moreover, TD Bank quite rightly points out that the guarantors have not placed any indemnification agreement in evidence.[38] The guarantors may claim that their situation is analogous to that in Philippe,[39] but lacking the actual indemnification provision to which they refer, I can only deal with the possibility that the guarantors *might* have a common law right to subrogation. Moreover, the record does not permit me to determine whether the guarantee's waiver of indemnification is effective, since there is no evidence that the guarantors can/will pay all the obligations. Therefore, based on the indemnification/subrogation argument alone, this lawsuit on the guarantees cannot support the exercise of the bankruptcy court's "related to" jurisdiction.

---

[36] Id.
[37] Defs.' Mot. to Transfer at 4.
[38] TD Bank's Resp. at 2. The bank also asserts that the deadline for asserting an indemnification claim in the bankruptcy court has passed. Id.
[39] Defs.' Reply at 3.

***(B) The Creditor-Guarantor-Debtor Relation***

But neither Omni nor Philippe dealt with a separate issue that is present here: whether the bankruptcy court has "related to" jurisdiction over a separate lawsuit by a creditor—who is already participating in a debtor's bankruptcy—against non-debtor guarantors. Pacor stated plainly, however, that "even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status vis-à-vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation."[40] That, according to Pacor, would support "related to" jurisdiction. That description fits this case exactly.

Here, TD Bank is a creditor of the debtor company with a secured claim against the bankruptcy estate; the bank's suit against the guarantors will, if successful, change its status vis-à-vis other creditors, the company's relationship to the underlying debt, and the amount of the company's liabilities.[41] TD Bank

---

[40] Pacor, 743 F.2d at 996.

[41] Courts have found that creditor suits against guarantors can affect a bankruptcy estate in a variety of ways. See, e.g., Adams Vessel (Bilbao) Ltd. v. Torch, Inc., 2005 U.S. Dist. LEXIS 12022, at *6, 8-9 (E.D. La. May 19, 2005) (holding that "when a creditor . . . seeks to recover from a guarantor of a debtor's indebtedness . . . [the] action constitutes a case 'related to' a Chapter 11 bankruptcy proceeding" because the resulting "shift in the constellation of creditors" can "affect the administration of the bankruptcy proceeding during the confirmation process"); Worldcom Network Servs. v. Al-Khatib, 1998 U.S. Dist. LEXIS 427, at *9 (S.D.N.Y. Jan. 21, 1998) (finding that "action to recover money under . . . guaranties" related to a bankruptcy because "the extent of defendants' liability on their respective guaranties [would] impact [the] plaintiff's recovery in its Chapter 11 claim"); In re Seatco, Inc., 257 B.R. 469, 476 (Bankr. N.D. Tex. 2001) (holding that an action to enforce a guaranty against a company president and sole shareholder could cripple a debtor-company and hamper its successful reorganization); Boco Enters. v. Saastopankkien Keskus-Osake-Pankki (In re Boco Enters.), 204 B.R. 407, 410 (Bankr. S.D.N.Y. 1997) ("An action by a creditor against a guarantor of the debtor's obligations, where the guarantor was an officer, director and shareholder of the debtor, is a proceeding within the "related to" jurisdiction of the bankruptcy court." (citing Young v. Sultan Ltd. (In re Lucasa Int'l Ltd.), 6 Bankr. 717, 718-19 (Bankr. S.D.N.Y. 1980)); Burns v. First Citizens Bank & Trust Co. (In re Rainbow Security), 173 B.R. 508, 511-12 (Bankr. M.D.N.C. 1994) (holding that a third-party suit that could determine
*(continued on next page)*

seeks declaratory judgment as to the enforceability of the guarantees and an order allowing it to sell the guarantors' company stock to satisfy the company's liabilities. There is no evidence that such a sale will fully satisfy the company's liabilities to TD Bank. As a result, TD Bank's sale of the guarantors' stock could reduce, but not extinguish, the bank's claim against the bankruptcy estate. If the guarantors are correct that they have waived indemnification only until the company's liabilities are paid, under that scenario they would not have any right to subrogation or indemnification. As a result, the bank's claim on the bankruptcy estate would decrease, and the amount of money available to other creditors would increase.[42]

TD Bank's lawsuit therefore relates to the bankruptcy case because the outcome of this lawsuit conceivably could alter, reduce, or eliminate one of the company's liabilities, alter the company's debt structure, and affect the amount of property in the estate and its allocation.[43]

---

which of two creditors would have a claim against the bankruptcy estate could "have a significant effect upon the administration of the estate, since the estate might very well have defenses against the third-party defendants, as officers, shareholders and insiders of the debtor corporation, which it would not have [against outsiders]."); but cf. Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara Consortium), 223 B.R. 40, 49 (B.A.P. 1st Cir. 1998) (finding no "related to" jurisdiction over declaratory judgment lawsuit concerning the validity and enforceability of a guarantee where it has "no substantial and direct financial impact upon the reorganization proceeding" and "will not affect the debt structure" of the debtor or change "the classification of a claim," and the guaranty litigation "is only a precursor to a potential claim of one creditor against another creditor").

[42] The same situation results if, as TD Bank argues, the guarantors waived all rights to indemnification or if the company indemnified them as officers and directors but not as individual guarantors. See TD Bank's Resp. at 2-3.

[43] See Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1307 (9th Cir. 1989) (holding that § 1334(b) jurisdiction existed over a suit for specific performance of a land contract against a non-debtor because the damages the plaintiff could receive from a debtor in bankruptcy for breach of the land contract would be reduced by the plaintiff's recovery of the property); Nationwide Mut. Fire Ins. Co. v. Eason, 736 F.2d 130, 133 (4th Cir. 1984) (holding that an award to surety bond

*(continued on next page)*

The defendants' motion is **GRANTED**, and it is **ORDERED** that this matter be transferred to the United States Bankruptcy Court for the District of Maine.

**SO ORDERED.**

**DATED THIS 20TH DAY OF NOVEMBER, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

beneficiaries, who comprised a majority of unsecured creditors in a bankruptcy, would "reduce the unsecured claims against the estate thereby giving the remaining unsecured creditors a larger share"); Spring St. Partners - IV, L.P. v. Lam, 2009 U.S. Dist. LEXIS 5416, at *4 (S.D. Tex. Jan. 27, 2009) (holding that if a secured creditor recovered from an individual guarantor, it would "thereby satisfy[] its bankruptcy claim in whole or in part [resulting] in more money being paid to the other creditors"); Richard E. Shaw & Assocs. v. Pointe De Sante, 2001 U.S. Dist. LEXIS 8791, at *9 (S.D. Cal. 2001) (holding that § 1334(b) jurisdiction existed over an interpleader action through which unsecured creditors could obtain funds that "would reduce or eliminate claims" against a bankruptcy estate "thereby reducing the number of unsecured creditors"); Spillman Dev. Group, Ltd. v. Am. Bank of Texas (In re Spillman Dev. Group, Ltd.), 2008 Bankr. LEXIS 3238, at *15-16 (Bankr. W.D. Tex. Sept. 2, 2008) (finding that if a creditor succeeded in collecting against guarantors, more money would be paid to other creditors since the creditor's claim would be reduced and the guarantors had "contractually waived their rights to subrogation").